IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY, Successor in Interest to Farmland Mutual Insurance Company and GREAT AMERICAN INSURANCE COMPANY** | **PLAINTIFFS/ COUNTERDEFENDANTS** |
| V.           CASE NO. 5:20-CV-5014 | |
| **OZARK MOUNTAIN POULTRY, INC. and OMP FARMS, LLC** | **DEFENDANTS/ COUNTERPLAINTIFFS** |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO DISMISS BAD FAITH CLAIM

Defendants Ozark Mountain Poultry, Inc. and OMP Farms, LLC (collectively, "Ozark") filed amended counterclaims against each Plaintiff in this matter alleging breach of contract and the tort of bad faith. (Docs. 82 & 83). Plaintiffs Nationwide Mutual Insurance Company ("Nationwide") and Great American Insurance Company ("Great American") each filed a Motion to Dismiss the bad faith claims, (Docs. 89 & 91), and a Brief in Support (Docs. 90 & 92, respectively). Ozark filed a Response in Opposition, (Doc. 94), and Nationwide filed a Reply (Doc. 97). The Court then granted Ozark an extension of time to amend its pleadings. The extended deadline having passed without any amendment, the Motions to Dismiss are ripe for consideration. For the reasons explained below, Plaintiffs' Motions to Dismiss (Docs. 89 & 91) are **GRANTED**.

### I. BACKGROUND

Ozark provided raw, torn chicken meat to House of Raeford Farms, Inc. ("Raeford"), which Raeford used to produce chicken tenders it sold to SOMMA Food Group, L.L.C. ("SOMMA"). In 2017, SOMMA sued Ozark, Raeford, and other parties in the District Court of Dallas County, Texas, alleging that Ozark had provided Raeford with

1

raw chicken containing bones, which Raeford used to make chicken tenders for SOMMA. The state-court jury concluded that Ozark manufactured a defective product that caused injury to SOMMA. (Doc. 11-3, p. 21). The jury also found that Ozark breached its contract to provide boneless chicken to Raeford. *Id.* 17. The state court entered judgment against Ozark for more than one million dollars.

During the relevant period, Ozark was insured by a commercial general liability ("CGL") policy issued by Farmland Mutual Insurance Company, to which Nationwide is successor in interest. That insurance policy has a one-million-dollar limit. Ozark was also covered by an excess CGL policy from Great American during the same period with a limit of twenty-five million dollars that applied after the limit under the Nationwide policy was met. Nationwide and Great American each seek declaratory judgment that the CGL policies provide no coverage for the judgment entered against Ozark in the District Court of Dallas County, Texas.[1] Ozark in turn brings counterclaims against both Plaintiffs for breach of contract and the tort of bad faith. Plaintiffs' Motions seek the dismissal of Ozark's claims against them for tort of bad faith pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Ozark has failed to adequately plead that claim.

## II. LEGAL STANDARD

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012)

---

[1] Great American was initially named as a defendant in this action, but the Court granted a motion to realign Great American as a plaintiff since Great American also seeks a declaration regarding the extent of its obligation to Ozark under the excess CGL policy. *See* Doc. 52.

2

(quotation omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). This includes pleading sufficient factual matter to show that prerequisite conditions of suit have been satisfied. *Id.* at 686–87. The alleged facts must be specific enough "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### III. DISCUSSION

In order to be successful, a claim based on the tort of bad faith must evidence "affirmative misconduct by the insurance company, without a good faith defense, and . . . the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy." *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 133 (1984). Arkansas recognizes a claim for bad faith when "an insurance company affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured." *Selmon v. Metro. Life Ins. Co.*, 372 Ark. 420, 426 (2008) (quoting *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 429 (2002)). Bad faith is defined as "dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, 628 (2005); *see also Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, 433 (2005). The standard for establishing a claim for bad faith is rigorous and difficult to satisfy. *Unum Life*, 362 Ark. at 627. "Mere negligence or bad judgment is insufficient

3

so long as the insurer is acting in good faith. The tort of bad faith does not arise from a mere denial of a claim; there must be affirmative misconduct." *Selmon*, 372 Ark. at 426 (internal citation omitted); *see also Am. Health Care Providers v. O'Brien*, 318 Ark. 438 (1994) (holding that nightmarish red tape, an insurance representative's abrupt attitude following cancellation of a group policy, and confusion over the referral process did not amount to bad faith).

In its amended counterclaims, Ozark offers two bases on which it believes each Plaintiff acted in bad faith. First, Ozark alleges that both Nationwide and Great American relied on multiple policy exclusions relating to damage to "your product" to refuse coverage in the dispute with SOMMA and Raeford. Ozark alleges that "ample factual testimony" was presented at trial to establish that Ozark "merely supplied raw material consisting of torn meat, not in a form for human consumption," which Raeford used to produce the chicken tender product. Ozark asserts that the "undisputed testimony at trial specifically established that Ozark 'didn't produce the product'" that SOMMA distributed. (Doc. 82, ¶ 18; Doc. 83, ¶ 17). Therefore, Ozark argues, in asserting that Ozark's claim under the policies involves damage to "your product," Nationwide and Great American are "misconstruing the facts to allege the damaged chicken tender product was [Ozark's] product." (Doc. 82. ¶ 18; *see also* Doc. 83, ¶ 17 (asserting that Great American is "misconstruing the damaged chicken tender product as being Ozark's product")).

Second, Ozark asserts that Nationwide acted in bad faith in claiming that "property damage" covered by the contract does not include the lost profits that were the damages in the state-court case. Ozark alleges that "controlling authority clearly has upheld a finding that lost profits are awardable as the <u>measure</u> of property damage." *Id*. at ¶ 19

4

(emphasis in original). As to Great American, Ozark's second basis for asserting its claim for bad faith is the insurance company's reliance on a "professional liability exclusion." Ozark argues that while "the term 'professional service' is not defined in the policy, there is no good faith basis for Great American to claim that killing, defeathering and deboning chickens for torn raw meat is within the ordinary meaning of those words." (Doc. 83, ¶ 18). Ozark goes on to point out that there is "no authority" to support Great American's interpretation of the term "professional service" and that Nationwide did not invoke a similar clause of its policy as a basis for denying coverage. *Id.*

In each Motion, Ozark urges the Court to infer "malicious intent in denying coverage" from each Plaintiff's "failure to provide coverage without a good faith basis, or at a minimum, refusing to withdraw its denial of coverage for reasons that had no factual or legal basis for denial and were not based on good faith disputes." (Doc. 82, ¶ 20; Doc. 83, ¶ 19). The Court recognizes that it may infer actual malice "from conduct and surrounding circumstances." *Aetna Cas.*, 281 Ark. at 134. Additionally, the Court acknowledges that "Arkansas law does not require proof of . . . misconduct at this stage of the litigation, before the parties have engaged in discovery. It would be the rare case in which an insured has concrete evidence of bad faith at the pleading stage." *Children's Safety Ctr., Inc. v. Phila. Indem. Ins. Co.*, 2015 WL 854252, at *2 (W.D. Ark. Feb. 26, 2015). However, the Court disagrees with Ozark that it "has adequately pleaded factual material raising a right to relief above the speculative level." *Id.* Having reviewed the policy language out of which the dispute arises[2] and the "controlling authority" Ozark cites

---

[2] In considering a motion to dismiss, the Court may examine any materials "necessarily embraced by the . . . complaint," such as agreements between the parties upon which

regarding lost profits, the Court cannot reasonably infer "dishonest, malicious, or oppressive conduct" by either Plaintiff in denying coverage. A disagreement as to the facts or the applicable law, even if the insurance company is mistaken in its position, does not rise to the level of bad faith. *Id.* The Court cannot, even by reasonable inference, conclude that a plausible claim has been made that Nationwide and Great American acted with malice in denying coverage to Ozark under the CGL policies.

## IV. CONCLUSION

For these reasons, Nationwide's Motion to Dismiss (Doc. 89) is **GRANTED** and Great American's Motion to Dismiss (Doc. 91) is **GRANTED**. Count Two of Ozark's amended counterclaim against Nationwide (Doc. 82) and amended counterclaim against Great American (Doc. 83) are dismissed without prejudice.[3]

**IT IS SO ORDERED** on this 21st day of September, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

claims are based. *Germain Real Estate Co., LLC v. HCH Toyota, LLC*, 778 F.3d 692, 695 (8th Cir. 2015).

[3] If, during discovery, Ozark comes across the smoking-gun email it offers as the reason the Court should not dismiss its claim with prejudice, it may seek leave to amend its Complaint.

6